**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: June 16, 2009**

_Craig A. Gargotta_

CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: The Drake Condos, LLC | § | CASE NO. 08-12601-cag |
| (DEBTOR) | § | CHAPTER 11 |

### SUPPLEMENTAL ORDER GRANTING MOTION TO DISMISS CASE

CAME ON TO BE CONSIDERED the Motion to Dismiss Case filed by Equity Secured Capital, LP ("ESC"). The Court finds that appropriate notice of both the motion and hearing thereof was issued. The Court finds that it issued its initial order regarding dismissal of this case on June 8, 2009, a true and correct copy of which is attached hereto as Exhibit A, and which is incorporated by reference.

The Court finds that pursuant to the second full paragraph on page 2 of the order, that the Debtor was to furnish an affidavit to ESC on or before 5 p.m. on June 8, 2009, or the case would be dismissed. The Court finds that pursuant to signature of counsel below, that the Debtor did not timely deliver such affidavit.

IT IS ORDERED that Debtor pay the United States Trustee the UST the sum of $325, that amount being the sum owed pursuant to 28 U.S.C. § 1930 by June 30, 2009. In addition, once the required Monthly Operating Reports are filed, if any additional fees are due pursuant to

28 U.S.C. § 1930, that sum must be paid in full by June 30, 2009. The Court shall retain jurisdiction to enforce the collection of same.

IT IS THEREFORE FURTHER ORDERED that the above styled and numbered bankruptcy proceeding is hereby dismissed.

**APPROVED:**

By:/s/ James V. Hoeffner
**JAMES V. HOEFFNER**
State Bar No. 09772700
**CHRISTOPHER H. TRICKEY**
State Bar No. 24014720
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Ave., Suite 2200
Austin, TX  78759
512.480.5707
**ATTORNEYS FOR CREDITOR**
**EQUITY SECURED CAPITAL, LP**


By:/s/ Charles A. Moster
Charles A. Moster
State Bar No. 00797782
Moster & Wynne PC
620 Congress, Suite 320
Austin, Texas 78701
512.320.0601
**ATTORNEYS FOR DEBTOR THE**
**DRAKE CONDOS,  LLC**


By:Brent A. Devere
**BRENT A. DEVERE**
State Bar No. 00789256
1411 West Avenue, Suite 200
Austin, Texas 78701
512.457.8080
**ATTORNEYS FOR CREDITOR**
**COLUMBIA  ENVIRONMENTAL**
**SERVICES, INC.**

# # #

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

Dated: June 08, 2009

*Craig A. Gargotta*

CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: The Drake Condos, LLC | § | CASE NO. 08-12601-cag |
| (DEBTOR) | § | CHAPTER 11 |
| | § | |

## ORDER REGARDING MOTION TO DISMISS CASE

CAME ON TO BE CONSIDERED the Motion to Dismiss Case filed by Equity Secured Capital, LP ("ESC"). The Court finds that appropriate notice of both the motion and hearing thereof was issued. The Court finds that ESC had previously filed a motion to lift stay and that because of the breadth of the agreed order on the same, that the Court required that the parties file a motion to compromise and settle pursuant to Bankruptcy Rule 9019. The Court finds that the Court approved and entered the Order Approving Settlement Agreement and the Order Granting Motion for Relief from Automatic Stay Upon Unimproved Land, both on April 23, 2009. Both orders speak for themselves. However, the Court finds that an essential part of the agreement underlying the order was that: (a) ESC furnish the sum of $85,000 to J.P. King Auction Company to use to market the subject property over a three month period; (b) that the Debtor was required to close and fund any sale of the subject property whereby all lienholders on the subject property were paid in full (including ESC's claim for principal, pre-acceleration



interest, post-acceleration interest, actual attorneys' fees, and actual costs) on or before the first Tuesday in August, 2009; (c) that ESC be permitted to post the subject property for an August, 2009, foreclosure sale or anytime thereafter; and (d) that any of the $85,000 not used to market the subject property be returned to ESC. The Court finds that as of the date of the hearing on the Motion to Dismiss, June 3, 2009, that J.P. King has not used any of the $85,000 to market the subject property. The Court further finds that the Debtor has represented that it has secured a proposed buyer/lender that is willing and capable of closing upon the purchase and/or refinancing of the subject property. The Court finds that the Debtor and ESC have entered into the following modifications to the two aforementioned orders as set out herein.

IT IS THEREFORE ORDERED that the $85,000 that ESC paid to J.P. King Auction Company be immediately returned to ESC, or in the event that such check has not been cashed that J.P. King Auction Company return and/or destroy such check.

IT IS FURTHER ORDERED that the Debtor shall furnish and deliver to ESC through its counsel an affidavit executed by the proposed buyer/lender in the form of the attached Exhibit "A" on or before 5 pm Central Time on June 8, 2009. Failure to do the same will result in this case being dismissed and/or with ESC having the authority and permission to immediately proceed with a foreclosure sale on the subject property to be held on or after the first Tuesday of July, 2009.

IT IS FURTHER ORDERED that regardless of whether the above affidavit is timely furnished that ESC shall be permitted to proceed with a foreclosure sale in August of 2009, as set out in the April 23, 2009, Order Granting Motion for Relief from Automatic Stay upon Unimproved Land and that such Order remains effective and in force except to the extent that it contradicts this Order.

2

IT IS FURTHER ORDERED that because of the Court's present schedule, that in the event this order is signed after June 5, 2009, that the order modifying stay and permitting foreclosure in July of 2009, that the stay shall be deemed lifted and annulled effective June 5, 2009.

IT IS FURTHER ORDERED that this Court retains exclusive jurisdiction to entertain any request for injunctive relief related to the prospective foreclosure by ESC on the subject property.

IT IS FURTHER ORDERED that in consideration of the modifications contained herein, that upon dismissal of this case and upon ESC foreclosure on the subject property that Steve Maida will be released from his personal guarantee on the obligation securing the subject property that is secured by the Debtor's obligation to ESC.

**IT IS FURTHER ORDERED** that pursuant to Bankruptcy Rule 4001(a)(3), that this Order is not stayed and that this Order is effective immediately.

**APPROVED AS TO FORM:**

By: _Christopher H. Trickey_
**JAMES V. HOFFNER**
State Bar No. 09772700
**CHRISTOPHER H. TRICKEY**
State Bar No. 24014720
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Ave., Suite 2200
Austin, TX 78759
512.480.5707
**ATTORNEYS FOR CREDITOR**
**EQUITY SECURED CAPITAL, LP**

3

By: /s/ Charles Moster, by Cht if permission

Charles A. Moster
State Bar No. 00797782
Moster & Wynne PC
620 Congress, Suite 320
Austin, Texas 78701
512.320.0601
**ATTORNEYS FOR DEBTOR THE
DRAKE CONDOS, LLC**

By: /s/ Brent Devere, by Clt w/ permission

**BRENT A. DEVERE**
State Bar No. 00789256
1411 West Avenue, Suite 200
Austin, Texas 78701
512.457.8080
**ATTORNEYS FOR CREDITOR
COLUMBIA ENVIRONMENTAL
SERVICES, INC.**

# # #

4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: The Drake Condos, LLC | § | CASE NO. 08-12601-cag |
| | § | |
| (DEBTOR) | § | CHAPTER 11 |

### AFFIDAVIT

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant, who, after being first duly sworn, stated as follows:

1.     My name is _____. I am the authorized representative for _____. I am over eighteen years of age, of sound mind, capable of making this affidavit, have never been convicted of a crime, and am fully competent to testify to the matters stated herein.

2.     I am familiar with and have inspected the unimproved real property owned by The Drake Condos, LLC ("The Drake"). This property is located in the quadrant next to and West of I 35 on the north side of Town Lake (but not lake front) in the area generally known as the Rainey Street Area, in Travis County Texas. A legal description of the property is contained in the documents attached to the promissory note described below.

3.     I understand that in order to purchase the Property, on our about October 25, 2007 the Drake borrowed money and signed a promissory note Equity Secured Capital ("ESC"), in the amount of $1,800,000. Such loan is evidenced and is repayable pursuant to the promissory note which is attached hereto as Exhibit A. ("the Note").

4.     I understand that the Note is secured by a deed of trust, a true and correct copy such deed of trust is attached hereto as Exhibit B. ("the Deed of Trust"). The Deed of Trust was duly perfected and recorded in 2007 at Document number 2007197151 in the Official Public Records of Travis County, Texas.

5.     I understand that The Drake defaulted on paying the Note to ESC, and that The Drake subsequently filed for bankruptcy on December 31, 2008.

6.     I understand that The Drake entered into a settlement with ESC and another creditor, Columbia Environmental Services, ("Columbia"), wherein The Drake would employ the services of JP King, an auctioneering firm to market the Property for sale to fund payment of ESC's and other creditors' claims. I also understand that under that agreement, ESC was entitled to foreclose on the Property on the first Tuesday of August 2009, in the event that JP King did not successfully market or sell the Property.

**EXHIBIT**

**A**

7.     These facts notwithstanding, I have the present financial capacity, ability and intention to purchase the Property and am prepared to close and fund the purchase of the Property, without contingency of any kind, no later than August 1, 2009.

8.     I am fully informed that my purchase of the Property must close and fund on or before August 1, 2009, without any contingencies, and  that the purchase price paid must fully satisfy all amounts due to ESC and Columbia, including all principal, pre- and post-default interest, late fees, closing costs and actual attorneys' fees.

9.     As of June 4, 2009, such amounts due to ESC, exclusive of attorneys' fees, total $2,018,702.78.

10.     I understand that this affidavit notwithstanding, ESC has the right to post the Property for foreclosure for the first Tuesday in August, 2009.  If the purchase of the Property does not occur on or before August 1, 2009, the Property will be sold at such foreclosure sale.

Further, Affiant sayeth not.

_____

_____
[Print Name]

SUBSCRIBED AND SWORN TO BEFORE ME on this the _____day of June, 2009.

_____
Notary Public - State of Texas

2

## REAL ESTATE LIEN NOTE

| | |
|---|---|
| **DATE:** | October 25, 2007 |
| **MAKER (whether one or more):** | THE DRAKE CONDOS, LLC, a Texas limited liability company |
| **MAKER'S MAILING ADDRESS (INCLUDING COUNTY):** | 108 E. 46th St.<br>Austin, Texas 78701<br>Travis County |
| **PAYEE/LENDER:** | EQUITY SECURED CAPITAL, L.P., a Texas limited partnership |
| **PAYEE'S MAILING ADDRESS (INCLUDING COUNTY):** | P.O. Box 160460<br>Austin, Texas 78716-0460<br>Travis County |
| **PRINCIPAL AMOUNT:** | ONE MILLION EIGHT HUNDRED THOUSAND AND NO/100 DOLLARS ($1,800,000.00) |
| **ANNUAL INTEREST RATE ON UNPAID PRINCIPAL FROM DATE:** | 15.875% annual rate from the Effective Date of this Note through and including May 1, 2009. |

**ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS:** 18%

**TERMS OF PAYMENT (PRINCIPAL AND INTEREST):** Beginning on the effective date of this instrument and continuing through and including May 1, 2009, interest only shall be due and payable on this Note. Any interest accruing from the effective date of this Note (the date of closing) through and including November 1, 2007, shall be paid to Payee by Maker at closing. Maker shall remit to Payee at Payee's address listed above monthly installments of $23,812.50 each, on the first (1st) day of each and every calendar month beginning December 1, 2007, and continuing through and including May 1, 2009. Any remaining balance of principal, interest, costs and fees due shall be remitted by final payment on May 1, 2009, the Final Maturity Date of this Note. Interest shall be calculated on the unpaid principal to the date of each installment and the payment made credited first to the discharge of interest accrued and the balance to the reduction of principal.

**DELINQUENCY FEE:** If any monthly installment of this Note becomes overdue for more than ten (10) days, a delinquency fee equal to ten percent (10.00%) of the monthly installment may be charged by Lender in order to defray the expense of handling the delinquent payment.

**PREPAYMENT:** This Note may be prepaid in whole or in part at any time and from time to time prior to maturity, and interest shall immediately cease to accrue as of the date of payment on any amount of principal that is prepaid.

NOTE                                                                 Page 1



EXHIBIT
A

S. M.

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 10 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 8 of
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 12 of
51

**SECURITY FOR PAYMENT:** This Note is secured by a Vendor's Lien retained for the benefit of Payee in a Deed of even date herewith and a Deed of Trust of even date from Maker to Eric J.W. Visser, Trustee, which conveys the following real property:

> Three parcels of land consisting of approximately 0.571 acres total and being known as Lots 1 and 2, Resubdivision of part of Block 6, DRISKILL'S & RAINEY'S SUBDIVISION of a part of outlots Nos. 72 and 73 Division "E", City of Austin, Travis County, Texas and more particularly described by metes in bounds in Exhibit A attached hereto and incorporated for all purposes herein (collectively, the "Property").

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, and the default continues for 10 days after payee gives Maker notice of the default or such time period as may otherwise be required by law or by other written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due. Subject to such notice provisions, Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest, to the extent permitted by law.

If this note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then Maker shall pay Payee all costs of collection and enforcement, including reasonable attorney's fees and court costs, in addition to other amounts due. Reasonable attorney's fees shall be 10% of all amounts due unless either party pleads otherwise.

**INTEREST PROVISIONS:**

(a) <u>Savings Clause</u>. It is expressly stipulated and agreed to be the intent of Maker and Lender at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the indebtedness evidenced by this Note and any related indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount (i) contracted for, charged, taken, reserved or received pursuant to this Note, any of the other loan documents executed contemporaneously with this Note or thereafter by and between Maker and Lender and related to the loan described in this Note (the "Loan Documents") or any other communication or writing by or between Maker and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, (ii) contracted for, charged, taken, reserved or received by reason of Lender's exercise of the option to accelerate the maturity of this Note and/or any related indebtedness, or (iii) Maker will have paid or Lender will have received by reason of any voluntary prepayment by Maker of this Note and/or any related indebtedness, then it is Maker's and Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, <u>ab initio</u>, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Lender shall be credited on the principal balance of this Note and/or any related indebtedness (or, if this Note and any and all related indebtedness have been or would thereby be paid in full, refunded to Maker), and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts

NOTE                                                            Page 2

S - M .

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 11 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 9 of 32
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 13 of 51

thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if this Note has been paid in full before the end of the stated term of this Note, then Maker and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Maker that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Maker and/or credit such excess interest against this Note and/or any related indebtedness then owing by Maker to Lender. Maker hereby agrees that as a condition precedent to any claim seeking usury penalties against Lender, Maker will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Maker or crediting such excess interest against this Note and/or any related indebtedness then owing by Maker to Lender. All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of any debt evidenced by this Note and/or any related indebtedness shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of this Note and/or any related indebtedness (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of this Note and/or any related indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to this Note and/or any related indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to this Note and/or any related indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

(b)     Ceiling Election. To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on the Note and/or any other portion of the indebtedness, Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended. To the extent United States federal law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Lender will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate. Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Maker as provided by applicable law now or hereafter in effect.

**PROTECTION OF PAYEE'S SECURITY:**

(a)     If Maker fails to perform the covenants and agreements contained in this Note, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Payee therein, including without limitation eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, which Payee reasonably determines that Maker is not diligently pursuing, then Payee, at Payee's option, may make such appearances, disburse such sums and take such action as Payee deems necessary, in its reasonable discretion, to protect Payee's interest, including without limitation, (i) disbursement of attorney's fees, (ii) entry upon the Property to make repairs, and (iii) procurement of satisfactory insurance as provided in the Deed of Trust.

(b)     Any amounts disbursed by Payee pursuant to this Paragraph, with interest thereon, shall become additional indebtedness of Maker added to the principal of this Note. Such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in this Note unless collection from

NOTE                                                                                              Page 3

$\mathcal{S}\cdot\mathcal{M}$ .

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 12 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 10 of 32
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document  Pg 14 of 51

Maker of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest non-usurious rate which may be collected from Maker under applicable law. Nothing contained in this Paragraph shall require Payee to incur any expense or take any action under this Note.

(c)     In the event the Holder of this Note advances any money, for any reason, there will be a $50.00 Advance Fee, per advance.

## MISCELLANEOUS PROVISIONS:

(a)     Transfer: Maker acknowledges and agrees that Payee may transfer this Note or partial interests in the Note to one or more transferees or participants. Maker authorizes Payee to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, credit information on Maker to any such transferee or participant or prospective transferee or participant.

(b)     Business Use: Maker warrants and represents to Payee that the proceeds of this Note will be used solely for business or commercial purposes, and in no way will the proceeds be used for personal, family or household purposes.

(c)     Non-Homestead: Maker warrants and represents to Payee that the property covered by the Deed of Trust securing this Note is not the business or residential homestead of Maker or any other person. As of the effective date of this Note, Maker has no present intent to occupy in the future or use or claim in the future such property either as business or residential homestead.

(d)     Joint and Several Obligations. Each maker is responsible for all obligations represented by this note.

(e)     Construction.     When the context requires, singular nouns and pronouns include the plural.

**NOTICE TO MAKER (BORROWER): THIS LOAN IS PAYABLE IN FULL AT MATURITY. AT MATURITY YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**MAKER:**

**THE DRAKE CONDOS, LLC,**

NOTE                                                            Page 4

a Texas limited liability company

By: S. MAIDA PROPERTIES, LLC,
a Texas limited liability company
Its: Manager

By: _____
Stephen M. Maida
Its: Sole Member

NOTE                                    Page 5

$S$ - $M$

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 14 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 12 of 32
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document  Pg 16 of 51

EXHIBIT "A"

### FIELD NOTES
### TOTAL TRACT

ALL THAT CERTAIN PARCEL OR TRACT OF LAND OUT OF OUTLOT NOS. 72 AND 73, DIVISION "E", CITY OF AUSTIN, TRAVIS COUNTY, TEXAS; BEING A PORTION OF BLOCK 6, DRISKILL'S AND RAINEY'S SUBDIVISION OF A PART OF OUTLOT NOS. 72 AND 73 DIVISION "E", AS RECORDED IN BOOK 1, PAGE 22 OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS AND ALL OF LOTS 1 AND 2, RESUBDIVISION OF PART OF BLOCK 6, DRISKILLS AND RAINEYS SUBDIVISION, AS RECORDED IN BOOK 60, PAGE 78 OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AND BEING ALL OF A TRACT AS CONVEYED TO BLUEBONNET ENTERPRISES LIMITED PARTNERSHIP BY WARRANTY DEED RECORDED IN DOCUMENT NO. 2000187939 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS; AND BEING ALL OF A TRACT AS CONVEYED TO FRANCIS A. CHRISTINA AND JULIE SPEED CHRISTINA BY WARRANTY DEED WITH VENDOR'S LIEN RECORDED IN VOLUME 8422, PAGE 868 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS; AND BEING ALL OF A TRACT AS CONVEYED TO HERBERT WEIGL, SR. BY WARRANTY DEED RECORDED IN VOLUME 2575, PAGE 373 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS; AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at a 1½" iron pipe found on the west right-of-way line of Rainey Street at the northeast corner of Lot A, Rainey River Addition, a subdivision as recorded in Book 60, Page 78 of the Plat Records of Travis County, Texas, said iron pipe found also being the southeast corner of the above described Bluebonnet Enterprises Limited Partnership tract, for the southeast corner and POINT OF BEGINNING of the herein described tract;

THENCE, with the south line of said Bluebonnet Enterprises Limited Partnership tract, N70°47'22"W a distance of 119.88 feet to a ½" iron rod found at the southwest

corner of said Bluebonnet Enterprises Limited Partnership tract on the east right-of-way line of a twenty (20)-foot alley for the southwest corner of this tract;

THENCE, with the east right-of-way line of said twenty (20)-foot alley, the following three (3) courses:

1) N19°01'56"E a distance of 49.90 feet to a 3/8" iron rod found at southwest corner of the above described Christina tract;

2) N18°50'17"E a distance of 57.00 feet to a 3/8" iron rod found at southwest corner of the above described Lot 1; and

3) N19°00'00"E a distance of 100.00 feet to a ½" iron rod set with cap stamped TERRA FIRMA at northwest corner of the above described Lot 2;

THENCE, with the north line of said Lot 2, S70°50'01"E a distance of 120.10 feet to a ½" iron rod set with cap stamped TERRA FIRMA on the west right-of-way line of Rainey Street at the northeast corner of said Lot 2;

THENCE, with the west right-of-way line of Rainey Street, the following three (3) courses:

1) S19°00'00"W a distance of 100.00 feet to a ½" iron rod found at the southeast corner of said Lot 1;

2) S19°00'00"W a distance of 56.95 feet to a ½" iron rod found at the northeast corner of said Bluebonnet Enterprises Limited Partnership; and

3) S19°06'10"W a distance of 50.04 feet to the POINT OF BEGINNING, and containing 0.570 acre (24,840 square feet) of land, more or less.

I HEREBY CERTIFY that these notes were prepared by Terra Firma Land Surveying from a survey made on the ground on November 10, 2006 under my supervision and are true and correct to the best of my knowledge.

Craig C. Gregar
Registered Professional Land Surveyor

Date 11/30/06

Client:      The Drake Condos, LLC
Date:        November 29, 2006
WO No.:      0A375-001-00/001
FB:          574
Disk:        0A375-001.CRD

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 16 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 14 of 32
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 18 of 51

(VC)                                                                          88

RECORDED BY
NORTH AMERICAN TITLE
TX0606630501JMW

          DT    2007197151
                              19 PGS

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEED OF TRUST
## SECURITY AGREEMENT AND
## ASSIGNMENT OF RENTS

**Date:**                    October 25, 2007

**Grantor/Borrower:**        The Drake Condos, LLC, a Texas limited liability company

**Grantor's Mailing Address**
**(including county):**      108 E. 46th St.
                             Austin, Texas 78751
                             Travis County

**Trustee:**                 ERIC J.W. VISSER

**Trustee's Mailing Address**
**(including county):**      7200 North Mopac Expressway
                             Suite 430
                             Austin, Texas 78731
                             Travis County

**Beneficiary:**             EQUITY SECURED CAPITAL, L.P., a Texas limited partnership

**Beneficiary's Mailing Address**
**(including county):**      P.O. Box 160460
                             Austin, Travis County, Texas 78716-0460

**Note(s)**
  **Date:**                  October 25, 2007

  **Amount:**                ONE MILLION EIGHT HUNDRED THOUSAND AND NO/100 DOLLARS
                             ($1,800,000.00)

  **Maker:**                 The Drake Condos, LLC, a Texas limited liability company

DEED OF TRUST                                                              Page 1



EXHIBIT
**B**

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 17 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 15 of 32
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document  Pg 19 of 51

| | |
|---|---|
| **Guarantor:** | Stephen M. Maida |
| **Payee:** | EQUITY SECURED CAPITAL, L.P. |
| **Final Maturity Date:** | May 1, 2009 |
| **Terms of Payment:** | In installments as provided in said Note. |

**Property (including any improvements):**

Three parcels of land consisting of approximately 0.571 acres total and being known as Lots 1 and 2, Resubdivision of part of Block 6, DRISKILL'S & RAINEY'S SUBDIVISION of a part of outlots Nos. 72 and 73 Division "E", City of Austin, Travis County, Texas and more particularly described by metes in bounds in Exhibit A attached hereto and incorporated for all purposes herein.

**together with all right, title and interest of Grantor in any personal property now or hereafter located on the above described real property (collectively, the "Property").**

**Prior Lien(s) (including recording information):**     NONE

**Other Exceptions to Conveyance and Warranty:**

Sanitary Sewer easement granted to the City of Austin as recorded in Volume 1417, Page 251, Deed Records of Travis County, Texas

For value received and to secure payment of the note, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property. If Grantor performs all the covenants and pays the Note according to its terms, this Deed of Trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

**Security Agreement**

1.    <u>Uniform Commercial Code Security Agreement</u>. This Instrument is also intended to be a security agreement between Borrower, as debtor, and Beneficiary, as secured party, pursuant to the Texas Uniform Commercial Code [Texas Business and Commerce Code Sec. 1.01, et seq. ("Texas UCC")] for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Texas UCC, and Borrower hereby grants Beneficiary a security interest in all such items. Borrower agrees that Beneficiary may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Beneficiary, upon Beneficiary's request, any financing statement, as well as extensions, renewals, and amendments thereof, and reproduction of this Instrument in such form as Beneficiary may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statement and any extensions, renewals, amendments, and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Beneficiary may

DEED OF TRUST                                                 **Page 2**

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document    Pg 18 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document    Pg 16 of 32
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document    Pg 20 of 51

reasonably require.  Without the prior written consent of Beneficiary, Borrower shall not create or suffer to be created pursuant to the Texas UCC any other security interest in said property or items, including replacements and additions thereto.  Upon the occurrence of an Event of Default (as that term is defined below), including the covenants to pay when due all sums secured by this Instrument, Beneficiary shall have the remedies of a secured party under the Texas UCC and, at Beneficiary's option, may also invoke the remedies provided in this Instrument as to such property or items.  In exercising any remedies, Beneficiary may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Beneficiary's remedies under the Texas UCC or of the remedies provided in this Instrument.

2.      Notice of Changes.  Borrower shall give advance notice in writing to Beneficiary of any proposed change in Borrower's name, identity, or structure and shall execute and deliver to Beneficiary, prior to or concurrently with the occurrence of any such change, all additional financing statements that Beneficiary may require to establish and maintain the validity and priority of Beneficiary's security interest with respect to any of the Property.

3.      Fixtures.  Some of the items of the Property are goods that are or are to become fixtures related to the Land.  Borrower and Beneficiary intend that, as to those goods, this Instrument shall be effective as a financing statement filed as a fixture filing from the date of its filing for record in the real estate records of the county in which the Property is situated.  Information concerning the security interest created by this Instrument may be obtained from Beneficiary, as secured party, at the address of Beneficiary stated above.  The mailing address of the Borrower, as debtor, is as stated above.

**Assignment of Leases**

1.      Assignment of Leases.  Borrower assigns to Beneficiary, and grants to Beneficiary a security interest in, all of Borrower's rights, but not Borrower's obligations, under existing and future leases, including subleases, and any and all extensions, renewals, modifications, and replacements of such leases, upon or of any part of the Property (the "Leases").  Borrower also assigns to Beneficiary all guaranties of tenants' performance under the Leases.  Prior to an Event of Default, Borrower shall have the right, without the joinder of Beneficiary, to enforce the Leases, unless Beneficiary directs otherwise.

2.      Lender in Possession.  Beneficiary's acceptance of this assignment shall not, prior to entry upon and taking possession of the Property by Beneficiary, be deemed to constitute Beneficiary a "mortgagee in possession," nor obligate Beneficiary to appear in or defend any proceeding relating to any of the Leases or to the Property, take any action hereunder, expend any money, incur any expenses, or perform any obligation or liability under the Leases, or assume any obligation for any deposits delivered to Borrower by any tenant and not delivered to Beneficiary.  Beneficiary shall not be liable for any injury or damage to person or property in or about the Property.

3.      Indemnification; Hold Harmless.  BORROWER HEREBY INDEMNIFIES AND HOLDS BENEFICIARY HARMLESS FROM ALL LIABILITY, DAMAGE, OR EXPENSE INCURRED BY BENEFICIARY FROM ANY CLAIMS UNDER THE LEASES, INCLUDING WITHOUT LIMITATION ANY CLAIMS BY BORROWER WITH RESPECT TO RENTS PAID DIRECTLY TO BENEFICIARY AFTER AN EVENT OF DEFAULT AND CLAIMS BY TENANTS FOR SECURITY DEPOSITS OR FOR RENTAL PAYMENTS MORE THAN ONE (1) MONTH IN ADVANCE AND NOT DELIVERED TO BENEFICIARY.  ALL AMOUNTS INDEMNIFIED AGAINST HEREUNDER, INCLUDING REASONABLE ATTORNEY'S FEES, IF PAID BY BENEFICIARY SHALL BEAR INTEREST AT THE MAXIMUM LAWFUL RATE,

DEED OF TRUST                                                                                              Page 3

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 19 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 17 of 32
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 21 of 51

SHALL BE PAYABLE BY BORROWER IMMEDIATELY WITHOUT DEMAND, AND SHALL BE SECURED BY THIS INSTRUMENT.

4.     <u>Right to Rely</u>. Borrower authorizes and directs the tenants under the Leases to pay Rents to Beneficiary upon written demand by Beneficiary, without further consent of Borrower and regardless of whether Beneficiary has taken possession of any other portion of the Property, and the tenants may rely upon any written statement delivered by Beneficiary to the tenants. Any such payment to Beneficiary shall constitute payment to Borrower under the Leases, and Borrower appoints Beneficiary as Borrower's lawful attorney-in-fact for giving, and is hereby empowered to give, acquittances to any tenants for such payments to Beneficiary after an Event of Default.

**Assignment of Rents**

1.     <u>Absolute Assignment of Rents</u>. As part of the consideration for the indebtedness evidenced by the Note, and for other valuable consideration, the receipt and sufficiency of which Borrower acknowledges, Borrower hereby absolutely and unconditionally assigns and transfers to Beneficiary all rents, issues, income, receipts, and profits from the Property, and all security deposits and other security therefor (the "Rents"), including those now due, or to become due by virtue of any Leases or other agreements for the occupancy or use of all or any part of the Property, regardless of to whom the Rents are payable. Borrower authorizes Beneficiary or Beneficiary's agents to collect the Rents and directs each tenant of the Property to pay such Rents to Beneficiary or Beneficiary's agents; provided, however, that prior to the occurrence of an Event of Default (as that term is defined herein), Borrower shall collect and receive all Rents as trustee for the benefit of Beneficiary and Borrower, to apply the Rents so collected to the sums secured by this Instrument in the order provided herein with the balance, so long as no such Event of Default has occurred, to the account of Borrower. Borrower and Beneficiary intend that this assignment of Rents constitutes an absolute and present assignment and not an assignment for additional security only. Borrower and Beneficiary intend that Beneficiary shall have the absolute right, power, and authority to collect the Rents.

2.     <u>Event of Default</u>. Upon the occurrence of an Event of Default, and without the necessity of Beneficiary entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver, Beneficiary shall immediately be entitled to possession of all the Rents specified in this section as the same become due and payable, including without limitation Rents then due and unpaid, and all such Rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Beneficiary only; provided, however, that the written notice by Beneficiary to Borrower of the breach by Borrower shall contain a statement that Beneficiary exercises its rights to such Rents. Borrower agrees that commencing upon delivery of such written notice of an Event of Default by Beneficiary to Borrower, each tenant of the Property shall make such Rents payable to and pay such Rents to Beneficiary or Beneficiary's agents on Beneficiary's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of any tenant to inquire further as to the existence of an Event of Default.

3.     <u>Borrower's Covenants</u>. Borrower covenants that Borrower has not executed any prior assignment of the Rents or any portion thereof, that Borrower has not performed, and will not perform, any acts and has not executed, and will not execute, any instrument which would prevent Beneficiary from exercising its rights under this section and that at the time of execution of this Instrument there has been no anticipation or prepayment of any of the Rents for more than thirty days prior to the due dates of such Rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any Rents more than thirty days prior to the due dates of such Rents without prior written consent of Beneficiary. Borrower further covenants that Borrower will execute and deliver to Beneficiary such further assignments of Rents as Beneficiary may from time to time request.

DEED OF TRUST                                              Page 4

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 20 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 18 of 34
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 22 of 51

4.    Appointment of Receiver; Possession of the Property.  Upon the occurrence of an Event of Default, Beneficiary may in person, by agent or by a court-appointed receiver, regardless of the adequacy of Beneficiary's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof, including without limitation the execution, cancellation or modification of Leases, the collection of Rents, the making of repairs to the Property, and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Beneficiary elects to seek the appointment of a receiver for the Property upon the occurrence of an Event of Default, Borrower consents to the appointment of such receiver.  Beneficiary or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

5.    Application of Rents.  All Rents collected subsequent to the occurrence of an Event of Default shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the Rents, including without limitation, reasonable attorney's fees, receiver's fees, premiums on receiver's bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments, and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as landlord of the Property, and then to the sums secured by this Instrument. Beneficiary or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those Rents actually received. Beneficiary shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property by reason of anything done or left undone by Beneficiary under this section, except for damages caused by Beneficiary's gross negligence or willful misconduct.

6.    Insufficient Rents.  If the Rents are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the Rents, any funds expended by Beneficiary for such purposes shall become an indebtedness of Borrower to Beneficiary secured by this Instrument. Unless Beneficiary and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Beneficiary to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note, unless payment of such interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest non-usurious rate which may be collected from Borrower under applicable law.

7.    No Waiver; Term.  Any entering upon and taking and maintaining of control of the Property by Beneficiary or the receiver and any application of Rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Beneficiary under applicable law or provided herein. This assignment of the Rents shall terminate at such time as this Instrument ceases to secure the Indebtedness held by Beneficiary.

**Indemnity Agreement**
AS PART OF THE CONSIDERATION FOR THE INDEBTEDNESS EVIDENCED BY THE NOTE, AND FOR OTHER VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH BORROWER ACKNOWLEDGES, BORROWER AND EACH GUARANTOR JOINTLY AND SEVERALLY HEREBY DEFEND, INDEMNIFY AND SAVE HARMLESS BENEFICIARY, ITS DIRECTORS, OFFICERS, MANAGERS, SHAREHOLDERS, AGENTS AND EMPLOYEES, SUCCESSORS AND ASSIGNS FROM ALL SUITS, ACTIONS, CLAIMS, DAMAGES (INCLUDING ACTUAL, CONSEQUENTIAL, AND PUNITIVE), LOSSES, FINES, PENALTIES, LIENS, CAUSES OF ACTION, SETTLEMENTS, FORFEITURES, ADMINISTRATIVE AND JUDICIAL PROCEEDINGS, COSTS OR LIABILITIES OF ANY KIND, NAME AND DESCRIPTION, INCLUDING COURT

DEED OF TRUST                                                                                                           Page 5

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 21 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 19 of
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document  Pg 23 of
51

COSTS, ATTORNEY'S FEES AND COSTS OF INVESTIGATION OR EXPERT WITNESS FEES ARISING OUT OF, RESULTING FROM OR CAUSED BY, IN WHOLE OR IN PART BY ANY GOVERNMENTAL INVESTIGATION, RIGHT, CLAIM, OPTION, CAUSE OF ACTION OR SUIT MADE, BROUGHT, OR FILED BY ANY PARTY WITH RESPECT TO THE PROPERTY HEREIN CONVEYED DURING THE TIME IN WHICH THIS DEED OF TRUST, AS AMENDED, MODIFIED OR EXTENDED, REMAINS IN FULL FORCE AND EFFECT. A DEFAULT UNDER THIS INDEMNITY PROVISION SHALL BE CONSTRUED AS A DEFAULT UNDER THIS DEED OF TRUST.

**Grantor's Obligations**

Grantor agrees to:

1.    keep the Property in good repair and condition;

2.    pay all taxes and assessments on the Property when due;

3.    preserve the lien's priority as it is established in this Deed of Trust;

4.    maintain, in a form acceptable to Beneficiary, an insurance policy that:
     a.    covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;
     b.    contains an 80% coinsurance clause;
     c.    provides fire and extended coverage, including windstorm coverage;
     d.    protects Beneficiary with a standard mortgage clause;
     e.    provides flood insurance at any time the Property is in a flood hazard area; and
     f.    contains such other coverage as Beneficiary may reasonably require;

5.    comply at all times with the requirements of the 80% coinsurance clause;

6.    deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;

7.    keep any buildings occupied as required by the insurance policy; and

8.    if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments.

**Beneficiary's Rights**

1.    Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.

2.    If the proceeds of the Note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.

3.    Beneficiary may apply any proceeds received under the insurance policy either to reduce the Note or to repair or replace damaged or destroyed improvements covered by the policy.

DEED OF TRUST                                                                      Page 6

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 22 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 20 of 32
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 24 of 51

    4.    If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the Note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this Deed of Trust.

    5.    If Grantor defaults on the Note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:

    a.    declare the unpaid principal balance and earned interest on the Note immediately due;

    b.    request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

    c.    purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Note.

**Trustee's Duties**

If requested by Beneficiary to foreclose this lien, Trustee shall:

    1.    either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

    2.    sell and convey all or part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

    3.    from the proceeds of the sale, pay, in this order:

    a.    expenses of foreclosure, including a commission to Trustee of 5% of the bid;

    b.    to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

    c.    any amounts required by law to be paid before payment to Grantor; and

    d.    to Grantor, any balance.

**General Provisions**

    1.    If any of the Property is sold under this Deed of Trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

    2.    Recitals in any Trustee's deed conveying the Property will be presumed to be true.

    3.    Proceeding under this Deed of Trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

    4.    This lien shall remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the Property is released.

    5.    If any portion of the Note cannot be lawfully secured by this Deed of Trust, payments shall be applied first to discharge that portion.

    6.    Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works

DEED OF TRUST                                           Page 7

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 23 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 21 of 32
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 25 of 51

or construction on or near the Property. After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the Note. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7.     Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Leases shall be assigned to Beneficiary as set forth in this instrument. Grantor warrants the validity and enforceability of the assignment. Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the Note or this Deed of Trust. Grantor will apply all rent and other income and receipts to payment of the Note and performance of this Deed of Trust, but if the rent and other income and receipts exceed the amount due under the Note and Deed of Trust, Grantor may retain the excess. If Grantor defaults in payment of the Note or performance of this Deed of Trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the Property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the Property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the Note and this Deed of Trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8.     When the context requires, singular nouns and pronouns include the plural.

9.     The term note includes all sums secured by this Deed of Trust.

10.    This Deed of Trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

11.    If Grantor and Maker are not the same person, the term Grantor shall include Maker.

12.    Grantor and each surety, endorser, and guarantor of the Note waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

13.    Grantor agrees to pay reasonable attorney's fees, trustee's fees and court and other costs of enforcing Beneficiary's rights under this Deed of Trust if this Deed of Trust is placed in the hands of an attorney for enforcement.

14.    If any provision of this Deed of Trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

15.    Grantor additionally agrees as follows;

a.     Definitions. Each of the following listed terms, as used in this Deed of Trust, has the meaning indicated below (such meaning to be applicable to both the singular and plural forms of such term):

i.     **Grantor or Borrower** means the party or parties executing this deed of trust and granting the lien evidenced thereby, whether one or more.

ii.    **Lender** means the owner and holder of the indebtedness secured by this deed of trust.

iii.   **Property** means the Property covered by this deed of trust.

iv.    **Hazardous Materials** means every substance or material which by any governmental requirement requires special handling in its collection, storage treatment or disposal, and includes without limitation the following: (a) those substances included within the definitions of "hazardous materials," "hazardous wastes," "toxic substances," "hazardous substances," or "solid wastes" in any Environmental Law; (b) asbestos; (c) polychlorinated

DEED OF TRUST                                                                 Page 8

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 24 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 22 of 32
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 26 of 51

byphenyls and (d) any substance, the presence of which on the Property is prohibited by any governmental authority.

v. **Environmental Law** means all statutes, ordinances, governmental rules and regulations which pertain to or regulate the environment, whether presently existing or enacted, issued or created hereafter, as the same may be amended or otherwise modified from time to time, and includes without limitation the Resource Conservation and Recovery Act of 1976, as amended, (42 U.S.C. Sections 6901 et seq.), the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, (42 U.S.C. Sections 1801 et seq.), the Clean Water Act (33 U.S.C. Sections 1251 et seq.), the Oil Pollution Act, as amended (33 U.S.C. §2701 et seq.), and the Texas Solid Waste Disposal Act , Tex. Health & Safety Code Ann. §361 et seq.), and rules and regulations promulgated under any of these statutes.

vi. **Remedial Work** means investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature.

b. <u>Knowledge of Grantor</u>. Except as disclosed to Lender in writing by Grantor, Grantor is not aware of any Hazardous Materials in, on, under or about the Property and Grantor is not aware of any pending or threatened proceeding, inquiry or claim involving Hazardous Materials which pertains to the Property.

c. <u>Maintenance and Use of the Property</u>. Grantor shall maintain the Property in compliance with Environmental Laws. Grantor shall not use, generate, manufacture, store, release, discharge or dispose of on, under or about the Property, or transport to or from the Property, any Hazardous Materials, except for Hazardous Materials, if any, which are used in Grantor's business, the existence of which is disclosed in writing to Lender, and which are stored, handled and disposed of in all respects in compliance with applicable legal requirements.

d. <u>Disclosure</u>. Grantor shall promptly notify Lender in writing of (a) any proceeding, inquiry or claim which is initiated or threatened in regard to Hazardous Materials, and (b) Grantor's discovery of any occurrence or condition on or in the vicinity of the Property that could cause any part of the Property to be subject to any restriction on the ownership, use or transferability of the Property under any Environmental Law. Lender shall have the right, but not the obligation, to join and participate as a party in any environmental proceeding or action initiated with respect to the Property, and to have Lender's attorney's fees in connection therewith paid by Grantor.

e. <u>Inspection</u>. Lender shall be entitled to enter upon the Property from time to time for the purpose of conducting inspections and environmental site assessments as deemed necessary by Lender; provided, however, that Lender shall notify Grantor in advance of each intended entry and shall not interfere unreasonably with Grantor's use of the Property.

f. <u>Remedial Work</u>. In the event that any Remedial Work becomes necessary or desirable on or in regard to the Property under any applicable Environmental Law, judicial order or other governmental requirement, Grantor shall promptly initiate such Remedial Work after receiving written demand for performance thereof by Lender and shall prosecute the same to completion, diligently and without interruption, at Grantor's cost. In the event Grantor fails to timely commence or to diligently prosecute to completion such Remedial Work, Lender may (but shall not be required to) cause such Remedial Work to be performed and Grantor shall promptly reimburse Lender for all costs and expenses thereof or incurred in connection therewith, which obligation to reimburse shall become part of the indebtedness secured by this deed of trust.

DEED OF TRUST                                                                                          Page 9

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 25 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 23 of 32
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:50  Main Document  Pg 27 of 51

g.   Indemnity. GRANTOR SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER FROM ANY AND ALL LIABILITIES (INCLUDING STRICT LIABILITY), ACTIONS, DEMANDS, PENALTIES, LOSSES, COSTS OR EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEY'S FEES AND REMEDIAL COSTS), SUITS, COSTS OF ANY SETTLEMENT OR JUDGMENT AND CLAIMS OF ANY AND EVERY KIND WHATSOEVER WHICH MAY NOW OR IN THE FUTURE (WHETHER BEFORE OR AFTER THE RELEASE OF LIEN HEREOF) BE PAID, INCURRED OR SUFFERED BY OR ASSERTED AGAINST LENDER BY ANY PERSON OR ENTITY OR GOVERNMENTAL AGENCY FOR, WITH RESPECT TO OR AS A DIRECT OR INDIRECT RESULT OF THE PLACEMENT OR EXISTENCE ON OR UNDER, OR THE ESCAPE, SEEPAGE, LEAKAGE, SPILLAGE, DISCHARGE, EMISSION, DISCHARGING OR RELEASE FROM THE PROPERTY OF HAZARDOUS MATERIALS, OR THE APPLICABILITY OF ANY GOVERNMENTAL REQUIREMENT RELATING TO HAZARDOUS MATERIALS (INCLUDING, WITHOUT LIMITATION, ANY SO-CALLED FEDERAL, STATE OR LOCAL "SUPERFUND" OR "SUPERLIEN" LAW, STATUTE, ORDINANCE, CODE, RULE, REGULATION, ORDER OR DECREE). THE REPRESENTATIONS, COVENANTS AND WARRANTIES CONTAINED IN THIS PARAGRAPH SHALL SURVIVE THE RELEASE OF FORECLOSURE OF THE LIEN OF THIS DEED OF TRUST.

16.   Interest Provisions:

(a)   Savings Clause. It is expressly stipulated and agreed to be the intent of Maker and Beneficiary at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the indebtedness evidenced by the Note and any related indebtedness secured by this instrument (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount (i) contracted for, charged, taken, reserved or received pursuant to the Note, any of the other loan documents executed contemporaneously with this Note or thereafter by and between Maker and Beneficiary and related to the loan described in the Note (the "Loan Documents") or any other communication or writing by or between Maker and Beneficiary related to the transaction or transactions that are the subject matter of the Loan Documents, (ii) contracted for, charged, taken, reserved or received by reason of Beneficiary's exercise of the option to accelerate the maturity of the Note and/or any related indebtedness, or (iii) Maker will have paid or Beneficiary will have received by reason of any voluntary prepayment by Maker of the Note and/or any related indebtedness, then it is Maker's and Beneficiary's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, ab initio, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Beneficiary shall be credited on the principal balance of the Note and/or any related indebtedness (or, if the Note and any and all related indebtedness have been or would thereby be paid in full, refunded to Maker), and the provisions of the Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if the Note has been paid in full before the end of the stated term of the Note, then Maker and Beneficiary agree that Beneficiary shall, with reasonable promptness after Beneficiary discovers or is advised by Maker that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Maker and/or credit such excess interest against the Note and/or any related indebtedness then owing by Maker to Beneficiary. Maker hereby agrees that as a condition precedent to any claim seeking usury penalties against Beneficiary, Maker will provide written notice to Beneficiary, advising Beneficiary in reasonable detail of the nature and amount of the violation, and Beneficiary shall have sixty (60) days after receipt

DEED OF TRUST                                                                                    Page 10

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 26 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 24 of 32
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 28 of 51

of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Maker or crediting such excess interest against the Note and/or any related indebtedness then owing by Maker to Beneficiary. All sums contracted for, charged, taken, reserved or received by Beneficiary for the use, forbearance or detention of any debt evidenced by this Note and/or any related indebtedness shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of the Note and/or any related indebtedness (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the Note and/or any related indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to this Note and/or any related indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to the Note and/or any related indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Beneficiary to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

(b)     Ceiling Election. To the extent that Beneficiary is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on the Note and/or any other portion of the indebtedness, Beneficiary will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended. To the extent United States federal law permits Beneficiary to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Beneficiary will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate. Additionally, to the extent permitted by applicable law now or hereafter in effect, Beneficiary may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Maker as provided by applicable law now or hereafter in effect.

17.     Grantor represents that this Deed of Trust and the Note are given for the following purposes: The Promissory Note is executed by Grantor for the benefit of Beneficiary and in consideration of Beneficiary's payment of gross loan proceeds in the amount of ONE MILLION EIGHT HUNDRED THOUSAND AND NO/100 ($1,800,000.00), the net proceeds of which shall be applied in their entirety towards Grantor's acquisition of the Property upon the execution of this instrument, the Promissory Note, and all other loan documents by Beneficiary and Grantor.

18.     If Grantor transfers any part of the Property or any interest therein, or places any junior encumbrance or debt against any of the Property, without Beneficiary's prior written consent, Beneficiary may declare the debt secured by this Deed of Trust immediately payable. In that event Beneficiary will notify Grantor that the debt is payable; if it is not paid within thirty (30) days after notice to Grantor, Beneficiary may without further notice or demand to Grantor invoke any remedies provided in this instrument for default. Exceptions to this provision for declaring the Note due on sale or transfer is limited to the grant of a leasehold interest of three years or less without an option to purchase.

19.     Protection of Beneficiary's Security.

a.     If Grantor fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Beneficiary therein, including without limitation eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, which Beneficiary reasonably determines that Grantor is not diligently pursuing, then Beneficiary, at Beneficiary's option, may make such appearances, disburse such sums and take such action as Beneficiary deems necessary, in its reasonable discretion, to protect Beneficiary's interest, including without limitation, (i) disbursement of attorney's fees, (ii) entry upon the Property to make repairs and (iii) procurement of satisfactory insurance as provided in this Deed of Trust.

DEED OF TRUST                                                                                     Page 11

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 27 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 25 of
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 29 of
51

b.    Any amounts disbursed by Beneficiary pursuant to this Paragraph, with interest thereon, shall become additional indebtedness of Grantor secured by this Deed of Trust. Such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Grantor of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest non-usurious rate which may be collected from Grantor under applicable law. Grantor covenants and agrees that Beneficiary shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the Indebtedness. Nothing contained in this Paragraph shall require Beneficiary to incur any expense or take any action under this Deed of Trust.

20.    **No Homestead.** Grantor represents to Beneficiary that no part of the Property is either the residential or business homestead of Grantor or any Guarantor and that Grantor and each Guarantor neither resides nor intends to reside in nor conducts nor intends to conduct business on the Property. Grantor and each Guarantor renounce all present and future rights to a homestead exemption for any part of any Tract defined as the Property. Grantor and each Guarantor acknowledge that Beneficiary relies on the truth of representations in this paragraph in making the loan secured by this deed of trust.

21.    Special Provisions. Grantor hereby represents and warrants to Beneficiary:

(a)    that as of the date of this instrument the Property is not in violation of any applicable environmental, air quality, zoning, planning, building, health, fire, traffic, safety, wetlands, endangered species, coastal and other governmental or regulatory rules, laws, ordinances, statutes, codes or requirements applicable to the Property.

(b)    that the Grantor shall keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of any applicable environmental, air quality, zoning, planning, building, health, fire, traffic, safety, wetlands, endangered species, coastal and other governmental or regulatory rules, laws, ordinances, statutes, codes or requirements applicable to the Property.

(c)    that in the event the Grantor discovers any previously unknown or undiscovered violation of the above rules, laws, ordinances, statutes, codes or requirements, it shall immediately notify Beneficiary in writing and the Grantor shall immediately take any such corrective action as may be necessary to bring the Property into compliance with the above described rules, laws, ordinances, statutes, codes or requirements.

(d)    that the Grantor hereby grants Beneficiary an easement for access to all of the Property and all facilities thereon for the purpose of conducting investigations, inspections, audits, etc. in order to determine if any of the above rules, laws, ordinances, statutes, codes or requirements have been violated.

(e)    that upon the request of Beneficiary, Grantor shall furnish to Beneficiary, at its sole cost and expense, an environmental audit of the Property performed by an auditor satisfactory to Beneficiary. Such audit must cover all applicable environmental requirements and be in form and substance satisfactory to Beneficiary.

(f)    that Grantor shall protect, indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost, expenses or liability (including attorney's fees and costs) directly or indirectly arising out of or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of any hazardous substance, lead paint, asbestos, etc. on, under or about the Property including without limitation (i) all foreseeable consequential damages; and

DEED OF TRUST                                                                                      Page 12

08-12601-cag Doc#71 Filed 06/17/09 Entered 06/17/09 15:53:26 Main Document Pg 28 of 34

08-12601-cag Doc#67 Filed 06/09/09 Entered 06/09/09 09:33:15 Main Document Pg 26 of
08-12601-frm Doc#25 Filed 03/06/09 Entered 03/06/09 08:57:55 Main Document Pg 30 of
51

(ii) the costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, remedial or other required plans. This indemnity shall survive the release of the lien of this Deed of Trust or any other deed of trust by and between Grantor and Beneficiary and secured by the Property, or the extinguishment of such liens by foreclosure or action in lieu thereof, and this covenant shall survive such release or extinguishment. This indemnity shall also supersede any "non-recourse" provisions found in this Deed of Trust, or any other deed of trust by and between Grantor and Beneficiary and secured by the Property, the notes secured thereby, any guaranty agreements, or any other loan documents associated therewith.

(g) That the Grantor's failure to comply with any of the terms hereof shall be considered an "Event of Default" as described herein. Beneficiary may further declare the note secured by this Deed of Trust or any other deed of trust by and between Grantor and Beneficiary and secured by the Property, due and payable if environmental contamination occurs or is discovered at any location, owned by the Grantor or not, which might adversely affect: (i) the value of any collateral pledged to secure the notes, including, without limitation, the Property; or (ii) the Grantor's (including guarantors, parent companies, sibling companies, or subsidiary companies) financial condition or ability to repay the note.

(h) that this Deed of Trust shall secure, in addition to the note therein described, all other indebtedness, of whatever kind and character, owing or which may hereafter become owing by Grantor to Beneficiary, whether such indebtedness is evidenced by a note, open account, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtedness is present or future, direct or indirect, primary or secondary, fixed or contingent or otherwise, and whether such indebtedness was originally owed to Beneficiary, or owed to others and acquired by purchase or otherwise by Beneficiary, it being contemplated that Grantor may now be or hereafter become indebted to Beneficiary in further sum or sums.

(i) that if any Event of Default ever occurs under any instrument, document or other writing whatsoever now or hereafter evidencing or securing any indebtedness now or hereafter secured by this Deed of Trust or any other deed of trust by and between Grantor and Beneficiary and secured by the Property, then, in any such event, Beneficiary, may at its option, (without demand, notice of any such default or event, notice of intent to accelerate maturity, notice of acceleration of maturity, presentment for payment or acceleration or any other act or notice whatsoever) declare immediately due and payable any and all indebtednesses then secured thereby.

(j) that in the event Grantor should sell, assign, transfer or convey any interest in or to any of the Property herein described, or should any other person or party otherwise acquire any interest whatsoever in or to the fee simple title to any of the Property herein described, without the prior written consent of Beneficiary (or the then-present holder of the notes and liens created by this Deed of Trust), then such party may, at its option (without demand, notice of any such Event of Default, notice of intent to accelerate maturity, notice of acceleration of maturity or presentment for payment or acceleration or any other act or notice whatsoever), declare immediately due and payable any and all indebtednesses then secured thereby.

(k) That Beneficiary may set-off any amount owed to it by Grantor under the notes secured by this Deed of Trust (less any rebate required by law) or any other deed of trust by and between Grantor and Beneficiary and secured by the Property, against any right Grantor has to receive money from Beneficiary. This includes any time deposit (including secured interests in any certificates of deposit), any money owed to the Grantor on an item presented to Beneficiary or in its possession for collection or exchange, and any re-purchase agreement or other non-deposit obligation. If Grantor's right to receive money from Beneficiary is also owned by someone who

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 29 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 27 of 34
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document  Pg 31 of 51

has not agreed to pay the note, the right of set-off held by Beneficiary, will apply to Grantor's interest in the obligation and to any other amounts Grantor could withdraw on the Grantor's sole request or endorsement. The right of set-off for the benefit of Beneficiary does not apply to an account or other obligation where Grantor's rights are only as a fiduciary. It also does not apply to any IRA account or other tax-deferred retirement account. Beneficiary will not be liable for the dishonor of any check when the dishonor occurs because Beneficiary set-off this debt against any of Grantor's accounts. Grantor agrees to hold Beneficiary harmless from any claims arising as a result of the exercise by Beneficiary, of its right of set-off.

22.     Grantor further represents and warrants that as of the date hereof and until the Note and any and all related indebtedness is paid in full:

(a)     Grantor and each person or entity owning an interest in Grantor is not and will not be (i) identified on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Assets Control, Department of the Treasury ("OFAC") and/or on any other similar list maintained by OFAC pursuant to any authorizing statute, executive order or regulation (collectively, the "List"), (ii) a person or entity with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, regulation, or Executive Order of the President of the United States;

(b)     none of the funds or other assets of Grantor constitute or will constitute property of, or are or will be beneficially owned, directly or indirectly, by any Embargoed Person (as hereinafter defined);

(c)     no Embargoed Person has or will have any interest of any nature whatsoever in Grantor (whether directly or indirectly);

(d)     none of the funds of Grantor have been or will be derived from any unlawful activity with the result that the investment in Grantor is prohibited by law or that the Agreement is in or will be in violation of law;

(e)     Grantor has and will continue to implement procedures, and has consistently and will continue to consistently apply those procedures, to ensure the foregoing representations and warranties remain true and correct at all times. The term "Embargoed Person" means any person, entity or government subject to trade restrictions under U.S. law, including but not limited to, the International Emergency Economic Powers Act, 50 U.S.C. §1701 et seq., The Trading with the Enemy Act, 50 U.S.C. App. 1 et seq., and any Executive Orders or regulations promulgated thereunder with the result that the investment in Grantor is prohibited by law or Grantor is in violation of law;

(f)     Grantor has complied and will continue to comply with all requirements of law relating to money laundering, anti-terrorism, trade embargos and economic sanctions, now or hereafter in effect;

(g)     Grantor has not and will not use funds from any "Prohibited Person" (as such term is defined in the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) to make any payment due to Lender under the Loan Documents.

23.     Entire Agreement. The Loan Documents (for purposes of this Paragraph, the same being the Note, this Deed of Trust and all ancillary documents and instruments executed by Grantor at closing) constitute the entire understanding and agreement between Grantor and Beneficiary with respect to the transactions arising in connection with the loan made by Beneficiary to Grantor, and supersede all prior written or oral understandings and agreements between Beneficiary and Grantor with respect to the matters addressed in the Loan Documents.

DEED OF TRUST                                                                                         Page 14

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 30 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 28 of 32
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document  Pg 32 of 51

In particular, and without limitation, the terms of any commitment by Beneficiary to make the loan to Maker are merged into the Loan Documents. Except as incorporated in writing into the Loan Documents, there are no representations, understandings, stipulations, agreements or promises, oral or written, with respect to the matters addressed in the Loan Documents.

THE WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.


GRANTOR:

THE DRAKE CONDOS, LLC,
a Texas limited liability company

By:  S. MAIDA PROPERTIES, LLC,
      a Texas limited liability company
Its:  Manager

By: _____
      Stephen M. Maida
Its:  Sole Member

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 31 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 29 of
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:58  Main Document  Pg 33 of
51

## ACKNOWLEDGMENTS

STATE OF TEXAS                    §
                                 §
COUNTY OF _Travis_               §

    This instrument was acknowledged before me on this the _25th_ day of October, 2007, by Stephen M. Maida, in his capacity as Sole Member of S. Maida Properties, LLC, a Texas limited liability company, the Manager of The Drake Condos, LLC, a Texas limited liability company, on behalf of the aforementioned limited liability companies.

Debra J. Corbell
Notary Public
State of Texas
My Commission Expires
OCTOBER 31, 2009

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:
Winn Chapman
GF#: TX066630501
Rash Chapman Schreiber Porter LLP
2112 Rio Grande St.
Austin, Texas 78705

DEED OF TRUST                                        Page 16

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 32 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 30 of 32
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:5c  Main Document  Pg 34 of 51

EXHIBIT "A"

FIELD NOTES
TOTAL TRACT

ALL THAT CERTAIN PARCEL OR TRACT OF LAND OUT OF OUTLOT NOS. 72 AND 73, DIVISION "E", CITY OF AUSTIN, TRAVIS COUNTY, TEXAS; BEING A PORTION OF BLOCK 6, DRISKILL'S AND RAINEY'S SUBDIVISION OF A PART OF OUTLOT NOS. 72 AND 73 DIVISION "E", AS RECORDED IN BOOK 1, PAGE 22 OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS AND ALL OF LOTS 1 AND 2, RESUBDIVISION OF PART OF BLOCK 6, DRISKILLS AND RAINEYS SUBDIVISION, AS RECORDED IN BOOK 60, PAGE 78 OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AND BEING ALL OF A TRACT AS CONVEYED TO BLUEBONNET ENTERPRISES LIMITED PARTNERSHIP BY WARRANTY DEED RECORDED IN DOCUMENT NO. 2000187939 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS; AND BEING ALL OF A TRACT AS CONVEYED TO FRANCIS A. CHRISTINA AND JULIE SPEED CHRISTINA BY WARRANTY DEED WITH VENDOR'S LIEN RECORDED IN VOLUME 8422, PAGE 868 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS; AND BEING ALL OF A TRACT AS CONVEYED TO HERBERT WEIGL, SR. BY WARRANTY DEED RECORDED IN VOLUME 2575, PAGE 373 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS; AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at a 1½" iron pipe found on the west right-of-way line of Rainey Street at the northeast corner of Lot A, Rainey River Addition, a subdivision as recorded in Book 60, Page 78 of the Plat Records of Travis County, Texas, said iron pipe found also being the southeast corner of the above described Bluebonnet Enterprises Limited Partnership tract, for the southeast corner and POINT OF BEGINNING of the herein described tract;

THENCE, with the south line of said Bluebonnet Enterprises Limited Partnership tract, N70°47'22"W a distance of 119.88 feet to a ½" iron rod found at the southwest

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 33 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 31 of
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document  Pg 35 of
51

corner of said Bluebonnet Enterprises Limited Partnership tract on the east right-of-way line of a twenty (20)-foot alley for the southwest corner of this tract;

THENCE, with the east right-of-way line of said twenty (20)-foot alley, the following three (3) courses:

1) N19°01'56"E a distance of 49.90 feet to a 3/8" iron rod found at southwest corner of the above described Christina tract;

2) N18°50'17"E a distance of 57.00 feet to a 3/8" iron rod found at southwest corner of the above described Lot 1; and

3) N19°00'00"E a distance of 100.00 feet to a ½" iron rod set with cap stamped TERRA FIRMA at northwest corner of the above described Lot 2;

THENCE, with the north line of said Lot 2, S70°50'01"E a distance of 120.10 feet to a ½" iron rod set with cap stamped TERRA FIRMA on the west right-of-way line of Rainey Street at the northeast corner of said Lot 2;

THENCE, with the west right-of-way line of Rainey Street, the following three (3) courses:

1) S19°00'00"W a distance of 100.00 feet to a ½" iron rod found at the southeast corner of said Lot 1;

2) S19°00'00"W a distance of 56.95 feet to a ½" iron rod found at the northeast corner of said Bluebonnet Enterprises Limited Partnership; and

3) S19°06'10"W a distance of 50.04 feet to the POINT OF BEGINNING, and containing 0.570 acre (24,840 square feet) of land, more or less.

I HEREBY CERTIFY that these notes were prepared by Terra Firma Land Surveying from a survey made on the ground on November 10, 2006 under my supervision and are true and correct to the best of my knowledge.

Craig C. Gregar
Registered Professional Land Surveyor No. 3936

Date  11/30/06

Client:      The Drake Condos, LLC
Date:       November 29, 2006
WO No.:   0A375-001-00/001
FB:          574
Disk:        0A375-001.CRD

RETURN TO:
NORTH AMERICAN TITLE
823 Congress Ave., Suite 1400
Austin, TX 78701

08-12601-cag  Doc#71  Filed 06/17/09  Entered 06/17/09 15:53:26  Main Document  Pg 34 of 34

08-12601-cag  Doc#67  Filed 06/09/09  Entered 06/09/09 09:33:15  Main Document  Pg 32 of 32
08-12601-frm  Doc#25  Filed 03/06/09  Entered 03/06/09 08:57:55  Main Document  Pg 36 of 51

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

2007 Oct 26 01:50 PM
MORALESB $85.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

2007197151